UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| JEFFREY SCOTT SCHREMBS ) | Case No. 05-15142-SSM |
| ) | Chapter 7 |
| Debtor ) | |

**MEMORANDUM OPINION**

This matter is before the court on the motion of Liberty Mutual Insurance Company ("Liberty Mutual") for clarification of the discharge order. Specifically, Liberty Mutual seeks a determination of whether the debtor's discharge prohibits it from cancelling a policy of automobile insurance for non-payment of premiums. A hearing was held on June 20, 2006, at which Liberty Mutual was present by counsel and the debtor was present in person and represented himself. Both parties filed post-hearing submissions which the court has considered. Because the debtor has now obtained alternate coverage, the cancellation issue has become moot, and the only remaining controversy is over the proper allocation of payments made by the debtor. And even that is moot because the debtor's wife is independently liable for the insurance premiums notwithstanding any discharge of the debtor's own liability.

Background

Jeffrey Scott Shrembs ("the debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in this court on October 14, 2005, and received a discharge on

1

January 19, 2006.  With the trustee having filed a report of no distribution in the interim, the case was closed on January 24, 2006.

Prior to filing the bankruptcy petition, the debtor and his wife, Jennifer Schrembs, were issued a policy of automobile insurance by Liberty Mutual, the term of which ran from February 24, 2005, to February 24, 2006.  Liberty Mutual offers two payment options.  One requires payment of the full premium at the outset of the policy.  The other allows monthly payments over approximately ten months.[1]  Since the payment period is less than the policy term, a policy holder who selects this option and makes each payment on time is actually "paid up" slightly ahead.  The debtor had elected the monthly payment option.  The debtor did not initially list Liberty Mutual as a creditor in his bankruptcy case.  On November 7, 2005, however, the debtor filed amended schedules adding Liberty Mutual as an unsecured creditor in the amount of $262.20, and on November 10, 2005, he mailed Liberty Mutual notice of the amendment.  The debtor explained that he obtained the $262.20 figure from an October 2, 2005, premium notice from Liberty Mutual showing that amount as the "policy balance" after a credit for a $95.00 payment received a week before the bankruptcy filing.

Ten days after the filing of the bankruptcy petition, Liberty Mutual mailed the debtor and his wife a bill for $175.90, which, according to an affidavit filed by Liberty Mutual, represented the partially unpaid September premium and wholly unpaid October premium.  When no payment was received, Liberty Mutual issued a notice on November 16, 2005, that the policy was being cancelled for non-payment of premiums.  Liberty Mutual's affidavit

---

[1] Liberty Mutual represents that the annual premium for the 2005-2006 policy was $1,003.00, with $211.50 of that amount paid up front and the balance in 9 monthly installments of $87.94 plus a $4.00 "processing fee."

states that the notice of the bankruptcy filing was received two days later, together with a $60.00 payment from the debtor. Liberty Mutual nevertheless cancelled the policy on December 6, 2005, but reinstated it retroactively a week later. Liberty Mutual received an additional $120.00 payment on January 23, 2006. For reasons that are not well-explained, Liberty Mutual issued a one-year renewal policy on February 24, 2006.[2] When no further payments were received from the debtor,[3] Liberty Mutual filed the motion that is currently before the court for clarification of whether the debtor's discharge prevents it from cancelling the renewal policy for non-payment of the premiums. The affidavit filed with the motion represents that the balance owed on the pre-petition policy was $119.00 and that $224.00 was owed on the post-petition policy through May 15th. Sometime prior to the hearing, the debtor sent Liberty Mutual a $358.70 payment. He also, in the face of a new cancellation notice by Liberty Mutual, obtained a policy with another company effective June 19, 2006.

## Discussion

Because the debtor has now obtained coverage with another insurance company, the issue of whether Liberty Mutual may cancel the existing policy is moot. However, the

---

[2] Liberty Mutual represents that the annual premium for the renewal policy is $1,003, with $150.45 to be paid at the commencement of the policy and the balance in ten monthly installments of $85.25 plus the $4.00 processing fee. At the hearing, the court was advised that Liberty Mutual has recently paid a claim under the renewal policy.

[3] The debtor represents that he and Liberty Mutual had engaged in extensive correspondence concerning his liability on the pre-petition policy, and that Liberty Mutual had agreed in mid-April that the debtor would not have to make any payments until "the matter was resolved" by this court. Notwithstanding this purported agreement, Liberty Mutual issued a cancellation notice on May 30, 2006.

parties continue to dispute the application of the payments made by the debtor and the amount of refund, if any, to which the debtor is entitled.

A.

At the outset, it is necessary to keep some basic bankruptcy principles in mind. The first is that a bankruptcy discharge affects only the personal liability of the debtor. It has no effect on the liability of any other party, such as the debtor's wife, for unpaid premiums. § 523(e), Bankruptcy Code. Nor does it prevent a creditor having collateral for its claim from proceeding against the collateral. *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991). Put another way, a discharge does not cause a debt to vanish or go away: it simply prevents the debt from being collected as a personal liability of the debtor. Accordingly, to the extent premiums remain unpaid on the pre-petition policy, they may be collected from the debtor's wife (who did not file bankruptcy) whether or not they can be collected from the debtor.

Second, the question of whether the policy can be cancelled for non-payment is a different question from whether the debtor's liability to pay those premiums has been discharged. That is because an unexpired insurance policy on which premiums remain on the filing date is an executory contract. *In re A. H. Robins Co., Inc.*, 68 B.R. 705, 707 (Bankr. E.D. Va. 1986). An executory contract is one on which performance remains due to some extent on both sides. *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1045 (4th Cir. 1985). That is clearly the situation here. The insurance company had an ongoing duty to pay valid claims against the policy; the debtor had an ongoing duty to pay the premiums. Because an executory contract is effectively an asset coupled with a liability,

4

a bankruptcy trustee has two options. § 365(a), Bankruptcy Code. If the benefit of the contract exceeds its burden, the trustee can assume the contract—that is, claim the benefit of the contract by performing the obligation. On the other hand, if the burden exceeds the benefit, the trustee may reject the contract—that is, elect not to perform the debtor's obligation.[4] A rejection constitutes a breach and gives rise to a claim for damages, but the breach is treated as a pre-petition claim. § 365(g), Bankruptcy Code. As such, it is subject to being discharged to the extent it is not paid in the bankruptcy. § 727(b), Bankruptcy Code. In a voluntary chapter 7 case, any executory contract that is neither accepted nor rejected by the trustee within 60 days of the filing of the petition is deemed rejected. § 365(d)(1), Bankruptcy Code. Although the rejection constitutes a breach, it would not necessarily constitute a material breach, such as would excuse performance by the non-debtor party. *Federal Realty Investment Trust v. Park (In re Park)*, 275 B.R. 253, 256-57 (Bankr. E.D. Va. 2002). Thus, where a lease under which the debtor occupies property is deemed rejected because the trustee neither assumed nor rejected it within the statutory period, but the debtor is current on the rent and not in breach of any other covenants, the landlord is not entitled to

---

[4] A number of cases have recognized a third possibility, "ride-through." *See, e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 546 n.12, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (Brennan, J., concurring and dissenting) ("In the unlikely event the contract is neither accepted nor rejected, it will 'ride through' the bankruptcy proceeding and be binding on the debtor even after a discharge is granted."). The reported cases recognizing or invoking "ride-through," however, all appear to arise in the reorganization context. Because Section 365(d)(1) expressly deems executory contracts to be rejected in a chapter 7 case if the trustee has neither assumed nor rejected the contract within the statutory period, the underlying premise of ride-through—the failure to assume or reject—would never be satisfied in a chapter 7 case.

evict the debtor. *Id.* But the converse also follows: if the debtor is behind in the rent, the landlord is free to seek possession of the premises once the automatic stay terminates.

B.

During the administration of the bankruptcy case, the automatic stay prevents the counter-party to an unexpired lease or executory contract from terminating it without first obtaining leave of court.[5] *In re The Minoco Group of Companies, Ltd.,* 799 F.2d 517, 518 (9th Cir. 1986). To the extent the debtor or trustee is enjoying the benefit of the contract without paying the reasonable value of that benefit, the other party may seek relief from the automatic stay. § 362(d), Bankruptcy Code. The automatic stay expires, in any event, once the debtor is granted or denied a discharge. § 362(c)(2)(C). Bankruptcy Code. It is replaced, with respect to dischargeable debts, by the discharge injunction. § 524(a)(2), Bankruptcy Code. The discharge injunction, however, is not as broad as the automatic stay. It prohibits "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt *as a personal liability of the debtor.*" *Id.* (emphasis added). It does not, however, prohibit enforcement of the debt against collateral in which the creditor has a valid security interest. It also does not prohibit the other party to an executory contract from terminating the contract if the debtor has materially breached its

---

[5] The cancellation of the policy on December 6, 2005, after Liberty Mutual received notice of the bankruptcy filing was plainly a violation of the automatic stay. A party injured by a willful violation of the automatic stay may recover compensatory and punitive damages, plus attorney's fees. § 362(h), Bankruptcy Code. In this case, the prompt reinstatement of the policy without a lapse in coverage presumably resulted in no monetary damages having been incurred. Whether compensatory damages can be recovered for emotional distress in an action under Section 362(h), and whether punitive damages would be appropriate in the circumstances presented here, are not before the court.

terms, such as by failure to make the payments required under the contract. (The discharge would, of course, prohibit a lawsuit against the debtor to collect the unpaid amounts, but that is a different issue.)

The debtor's position is that by scheduling the remaining premiums due under the policy, he could be relieved of all of his obligations under the policy but could hold Liberty Mutual to its obligation to provide coverage. The fallacy of this position should be apparent. It is precisely as if a debtor, one month before filing bankruptcy, were to enter into a one-year apartment lease at, say, $1,000 per month, and then make only one rent payment. The debtor then lists the landlord as a creditor who is owed, through the remaining term of the lease, $11,000. The debtor, however, cannot enjoy the benefit of the lease without also shouldering its burdens. It is true that so long as the automatic stay remains in effect, the landlord cannot terminate the lease and obtain possession of the property. However, once the stay terminates—whether on motion of the landlord during the case, or by operation of law when the debtor receives a discharge—the landlord is free at that point to terminate the lease and to bring a suit for possession, although not for the unpaid rent due under the lease.[6] So it is with an executory insurance policy. Liberty Mutual could have brought a motion for relief from the automatic stay in order to cancel the policy. Not having done so, it was bound to perform under the policy until the debtor received a discharge. At that point, however, it was free to terminate the policy for non-payment of premiums.

---

[6] The landlord might be able to sue on a theory of quantum meruit for the fair rental value of the debtor's *post-petition* occupancy, but that is a different issue, and one that the court need not reach in the context of the present motion.

7

C.

A complicating factor in the present case is that Liberty Mutual not only did not cancel the policy once the debtor received a discharge, it then issued a *new* policy. Copies of the policy have not been provided to the court. Ordinarily, however, each insurance policy would be an independent contract. In the absence of a cross-default provision, the breach of one contract does not ordinarily excuse a party from its obligations under a separate or subsequent contract. For that reason, if the debtor were the only party liable on the policy, any payments tendered after the date of the renewal policy would have to be applied to the post-petition policy, since the discharge prohibits setoff of the debtor's pre-petition obligation against excess payments he may have made on the post-petition policy.

But, as previously noted, the debtor is *not* the only party liable for making payments on the policy: the billing statement placed in evidence by the debtor and the affidavit by Liberty Mutual each reflect that the policy was issued in the names of both the debtor and his wife. Since discharge affects only the debtor's liability, and not that of his wife, Liberty Mutual is free to apply the payments received first to the 2005-2006 policy, and then to the 2006-2007 policy. If doing so results in a shortfall, however, only the debtor's wife is liable for its payment.

In summary, prior to the debtor's discharge, Liberty Mutual was barred by the automatic stay from cancelling the policy but could have requested relief from the automatic stay for that purpose. Once the automatic stay terminated and was replaced by the discharge injunction, Liberty Mutual could have cancelled the policy if the payments were materially in default (subject to any state law restrictions on cancellation). The discharge injunction

8

bars Liberty Mutual from attempting to collect the unpaid premiums as a personal liability of the debtor, but not of his wife.  It also bars Liberty Mutual from offsetting the debtor's liabilities under the pre-petition contract (but not those of his wife) against benefits or payments due under the post-petition policy.

Since the debtor has now obtained coverage from a different insurance company, the question of whether Liberty Mutual may cancel the post-petition insurance policy is moot.  From the representations made at the hearing, it would appear that the recent $358.70 payment received by Liberty Mutual fully covers the unpaid premiums due on both policies.  Any further account adjustments, to the extent small sums may be due one way or the other, do not implicate the discharge injunction and are therefore beyond the purview of this court.  For that reason, an order will be entered dismissing the motion for clarification as moot.

Date: _____                    _____
                                                                      Stephen S. Mitchell
Alexandria, Virginia                                           United States Bankruptcy Judge

Copies to:

Jennifer M. McLemore, VSB No. 47164
Christian & Barton, L.L.P.
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Counsel for Liberty Mutual Insurance Co.

Jeffrey Scott Schrembs
46720 Stonebrook Court
Sterling, VA 20164
Debtor *pro se*

Gordon P. Peyton, Esquire
Redmon, Peyton & Braswell
510 King Street, suite 301
Alexandria, VA  22314
Chapter 7 trustee

Office of the United States Trustee
115 South Union Street, Suite 210
Alexandria, VA  22314